# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW BURGER, | : | No. 1:09-cv-2571 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| C. DANIEL HASSELL, Secretary, | : | |
| Commonwealth of Pennsylvania | : | |
| Department of Revenue, and | : | |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA DEPARTMENT | : | |
| OF REVENUE, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

### February 1, 2013

Before the Court in this matter is the Motion for Summary Judgment (doc. 25) of Defendants C. Daniel Hassell and the Commonwealth of Pennsylvania Department of Revenue. The Motion has been fully briefed and is therefore ripe for disposition. For the reasons that follow, we will grant the said Motion in its entirety and enter summary judgment in favor of the Defendants.

## I. PROCEDURAL HISTORY

The Plaintiff, Andrew Burger, initiated the above-captioned action on December 30, 2009, with the filing of a Complaint (doc. 1) against the Secretary

of the Pennsylvania Department of Revenue ("Secretary") and the Department of Revenue ("Department") itself asserting that the Defendants had unlawfully terminated the Plaintiff in retaliation for his exercise of statutorily protected rights. The Plaintiff filed an Amended Complaint (doc. 2) the following day, identifying C. Daniel Hassell as then-Secretary of the Department. The Defendants filed an Answer (doc. 8) on March 26, 2010, and asserted several affirmative defenses, including sovereign and qualified immunity. After a period of discovery, the Defendants filed the instant Motion for Summary Judgment. (Doc. 25). The Motion has been fully briefed and is ripe for our review.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is

"genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a fact finder could draw therefrom. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still,

"the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## III. STATEMENT OF FACTS

Plaintiff Andrew Burger was hired by the Department in August of 1999 in a trainee position. (Doc. 26, ¶ 1). He was promoted one year later to Corporation Tax Officer 1. (*Id.*). In this position, Plaintiff was responsible for reviewing tax reports for errors; he would then code those errors so that the Department could advise the taxing entity of their findings. (*Id.* ¶ 2). These reports were then double-checked by the Auditor General before finalization. (*Id.*). As an ongoing requirement of his employment, Plaintiff was required to and did on multiple occasions sign a Confidentiality Policy and Standards of Conduct Manual. (*Id.* ¶¶ 6-9, 12-15). Plaintiff was advised and understood that the penalty for violation of the Confidentiality Policy is termination. (*Id.* ¶ 17).

The Plaintiff has been diagnosed with attention deficit disorder since approximately 2000. (*Id.* ¶ 49). On July 17, 2000, the Plaintiff filled out a request for an accommodation stating that excess noise affects and distracts him and requesting written instructions to reinforce verbal instructions to keep him on task.

4

(*Id.* ¶ 50). The Department accommodated this request. (*Id.* ¶ 51). On August 31, 2001, the Plaintiff filed another request regarding implementation of a telephone system that the Plaintiff had trouble using; after discussions with his supervisor, alternatives were implemented, and the Plaintiff notes that he considers this request to have been accommodated as well. (*Id.* ¶¶ 52-55). Plaintiff has not made any requests to be accommodated since November of 2001. (*Id*. ¶ 57). In January of 2003, the Plaintiff was again promoted to Corporate Tax Officer 2. (*Id.* ¶ 1).

In approximately December of 2005, Plaintiff received a negative interim evaluation from his supervisor, John Naccarato. (*Id.* ¶ 18). On January 16, 2006, and in response to said evaluation, Plaintiff filed a complaint alleging age and disability discrimination with the Pennsylvania Human Relations Commission ("PHRC"). (*Id.* ¶ 19). Plaintiff believed that it was Naccarato's intent to have him terminated based upon his age and his disability. (*Id.* ¶ 20). Plaintiff thereafter received a commendable evaluation in August of 2007; in light of this positive evaluation, Lynnette Taylor ("Taylor"), the PHRC caseworker handling the Plaintiff's case encouraged him to withdraw his complaint. (*Id.* ¶¶ 21-22).

Plaintiff agreed to withdraw his 2006 PHRC Complaint but only after he had forwarded a rebuttal to the interim evaluation to Taylor to be placed in his file. (*Id.* ¶ 23). Plaintiff thereafter placed his rebuttal statement and several confidential

5

corporate taxpayer documents in an interoffice mail envelope addressed to Taylor. (*Id.* ¶ 24). According to Plaintiff, the confidential information was necessary to supplement his rebuttal and counter the negative performance evaluation that his complaint sought to discharge. Plaintiff contacted Taylor to confirm receipt of the rebuttal packet, at which point he learned that Taylor had never received it. (*Id.* ¶ 25). Taylor was then contacted by a Department attorney, Julia Sheridan, who advised that the packet had been intercepted by the Department's human resources office and forwarded to the legal division because it contained confidential documents. Sheridan advised that the confidential documents would be removed and that the remainder of the packet would be forwarded to Taylor. (*Id.* ¶ 26). At the time that Plaintiff sent the packet to Taylor, Plaintiff believed that, because he was acting in furtherance of withdrawing his 2006 complaint, he was not violating the Department's Confidentiality Policy. (*Id.* ¶ 29).

In the later months of 2007, after the packet had been sent, Jane Baldo, a labor relations analyst with the Department, began an investigation into whether Plaintiff's disclosure of the documents constituted a violation of the Department's Confidentiality Policy. (*Id.* ¶¶ 32-35). After her investigation, Baldo convened a prediscplinary conference on December 5, 2007, with the participation of the Plaintiff and several other employees. (*Id.* ¶ 36). At the conclusion of that meeting,

Plaintiff was indefinitely suspended from employment without pay or benefits. (*Id.* ¶ 38). After that meeting, Plaintiff sent an email to Baldo in which he again explained that he was under the impression that sending the documents to Taylor in conjunction with filing his rebuttal and withdrawing the 2006 complaint was not in violation of the Department's Confidentiality Policy. (*Id.* ¶ 39). Plaintiff explained that Taylor had never told him not to send confidential documents, despite his declared intent to provide a "very detailed" rebuttal. (*Id.*).

After the predisciplinary conference, Baldo issued a report of her findings as well as a recommendation that the Plaintiff be terminated for his perceived violation of the Department's Confidentiality Policy. (*Id.* ¶ 43). This report and recommendation was reviewed by Department Deputy Secretary Barry Drew and ultimately by the Department's then-Secretary, Tom Wolf, both of whom agreed with and approved of the recommendation. (*Id.* ¶¶ 44-45). Then-Secretary Wolf signed Plaintiff's termination letter, and on January 4, 2008, Plaintiff was fired for violation of the Department 's Confidentiality Policy. (*Id.* ¶ 47). On January 11, 2008, the PHRC and the EEOC sent letters to the Plaintiff acknowledging the withdrawal of his 2006 age and disability discrimination complaint. (*Id.* ¶ 48).

On December 17, 2007 and January 17, 2008, respectively, Plaintiff filed grievances regarding his indefinite suspension and ultimate termination. (*Id.* ¶ 61).

His grievance was initially denied at the first hearing, after which the Plaintiff's union moved the grievances before a committee, which heard them on May 8, 2008. (*Id.*). After deliberation, the committee deadlocked and the grievances were scheduled for arbitration. (*Id.*). Before an arbiter could hear the case, the union canceled the arbitration and requested a settlement to which Plaintiff agreed on October 7, 2008. (*Id.* ¶ 62). The terms of the settlement permitted the Plaintiff to submit a resignation letter to the Department, which he did on October 10, 2008, and prohibited the Plaintiff from seeking reemployment with the Department.[1] (*Id.*). The Plaintiff thereafter filed a new PHRC complaint charging that his December 5, 2007 indefinite suspension and January 4, 2008 termination were in retaliation for his 2006 PHRC filing. (*Id.* ¶ 64). These most recent allegations form the basis of the Plaintiff's claims in the case *sub judice*.

**IV. DISCUSSION**

Plaintiff's Amended Complaint sets forth four causes of action for retaliatory employment practices, claiming violations of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504" or "Rehabilitation Act") (Count I), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (Count II),

---

[1] We query why the settlement of the grievance was evidently unaccompanied by a release that would have barred the instant action. However, because that issue is not before the Court, we will not speculate on it further.

the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(d) (Count III), and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. § 955(d) (Count IV). The Defendants assert several related arguments in their summary judgment motion attacking the merits of each of the Plaintiff's claims.

As a threshold matter, we note that the Plaintiff's opposition papers offer some clarification with respect to which Defendants are named in each claim, and in what capacity, and as to the particular relief available against each. First, the Plaintiff agrees that the claims under the ADA and the ADEA are not brought against all Defendants as asserted in the Complaint but are instead brought against the Defendant Secretary in his official capacity and that no claim for individual liability exists under either statute. At the agreement of the parties, we will thus grant the Defendants' Motion to the extent it seeks to dismiss the ADA and ADEA claims against the Department and against the Secretary in his individual capacity. The parties have further clarified that the Rehabilitation Act claim is brought against the Department only, and not all Defendants as the Amended Complaint purports, and we will thus further grant the Defendants' Motion to the extent it seeks dismissal of the Defendant Secretary on that claim. With respect to each of these claims, the parties are in agreement that only prospective relief is available but apparently dispute what exactly prospective relief entails. Finally, the parties

agree that the Commonwealth has not waived sovereign immunity with respect to the Plaintiff's PHRA claim and thus agree to dismissal of Count IV. With this as background, we consider the remainder of the parties' arguments.

### A. *Prima Facie* Retaliation Claim

Plaintiff asserts retaliation claims under the Rehabilitation Act, the ADA, and the ADEA, asserting that he was unlawfully terminated because he engaged in protected activity under each of these statutes. Because the Rehabilitation Act and the ADEA borrow the standard of review for unlawful retaliation claims from the ADA, we address these claims together. In order to prove a *prima facie* case of retaliation under any of these statutes, a plaintiff must establish that he engaged in "protected employee activity," that he suffered "adverse action by the employer either after or contemporaneous with the employee's protected activity," and that there exists "a causal connection between the employee's protected activity and the employer's adverse action." *See Krouse v. Am. Sterlizer*, 126 F.3d 494, 500 (3d Cir. 1997) (stating standard in ADA case); *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) (ADEA case); *Kania v. Potter*, 358 Fed. App'x 338, 344 (3d Cir. 2009) (Rehabilitation Act case). The Defendants concede that the filing of a PHRA complaint is a protected activity and that termination from employment constitutes an adverse employment action and thus do not dispute that

the Plaintiff has satisfied the first and second elements of his claims. The parties instead focus their arguments on the third and final element of causation.

Causation is established where a plaintiff demonstrates either a temporal proximity between his protected activity and the adverse employment action that is "unusually suggestive" of retaliation or timing plus other evidence, such as evidence that the employer demonstrated a pattern of antagonism with or animosity toward the plaintiff following the protected activity. *Luckiewicz v. Potter*, 670 F. Supp. 2d 400, 411 (E.D. Pa. Nov. 23, 2009) (citing *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004); *Robinson v. SEPTA*, 982 F.2d 892, 895 (3d Cir. 1993)). As the *Krouse* court explained:

> The "mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." Even if timing alone could ever be sufficient to establish a causal link, the timing of the alleged retaliatory action must be "unusually suggestive" of retaliatory motive before a causal link will be inferred. . . . We have also held that the "mere passage of time is not legally conclusive proof against retaliation." When temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.

*Krouse*, 136 F.3d at 503-04 (affirming judgment for the employer where there was no evidence of antagonism or retaliatory animus during nineteen-month period between the filing of the plaintiff's charge and the alleged retaliatory action).

We first consider whether the timing of the Plaintiff's termination suggests that it was motivated by retaliatory animus rather than legitimate circumstances. The record establishes that the Plaintiff filed his charge alleging disability and age discrimination on January 16, 2006 and thereafter remained employed with the Defendant until his termination on January 4, 2008, nearly two years later. (Doc. 26, ¶¶ 19, 47). The record further establishes that the Plaintiff received at least one positive evaluation following the filing of his charge of discrimination. (*Id.* ¶ 21).

While the passage of mere hours or days has been deemed unusually suggestive, courts have held that the passage of weeks, months, and years removes any suggestion of retaliatory motive. *Compare Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (two month gap insufficient); *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (three week gap insufficient) *with Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (two day gap unusually suggestive); *Reinhart v. Mineral Techs., Inc.*, 2006 U.S. Dist. LEXIS 89279, *35 (E.D. Pa. Nov. 27, 2006) (twenty-four hour turnaround unusually suggestive). Guided by this precedent, we simply cannot conclude that a

twenty-four month span between events is enough to trigger a reasonable inference of retaliatory motive.[2]

Given the lack of suggestive timing, we must review the record for other evidence of retaliatory animus. As the Plaintiff properly notes, "it is causation, not temporal proximity or evidence of antagonism, that is an element of plaintiff's prima facie case, and temporal proximity or antagonism merely provides an evidentiary basis from which an inference can be drawn," and we thus must query whether other evidence of record gives rise to a reasonable inference that the Plaintiff's termination was motivated by retaliatory intent. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000) (quoting *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 178 (3d Cir. 1997)). Viewing the record with this broader lens, we nevertheless conclude that the Plaintiff has failed to submit any evidence establishing that he was terminated in retaliation for his protected activity.

---

[2] The Plaintiff contends that timing should not be calculated from the date of the initial charge but instead from the date of his last action in prosecuting his PHRC claim, specifically the withdrawal of his complaint and the accompanying detailed rebuttal which was mailed on November 15, 2007. Notwithstanding the fact that the Plaintiff is essentially contending that withdrawal of his claim against the Defendants might serve as the basis for the Defendant's retaliatory actions, we nonetheless conclude, with the support of the above-cited case law, that even this reduced two-month interim period is insufficient to suggest a retaliatory intent. Moreover, we harbor serious doubt that the *withdrawal* and not the *filing* of a claim could operate as a retaliatory trigger, particularly on the undisputed facts before us.

As other evidence of causation, the Plaintiff submits that: (1) Taylor, the PHRC agent assigned to the Plaintiff's case, threatened Sheridan, counsel for the Department, with a default against the Department for failure to respond to the PHRC's request for documents in connection with the Plaintiff's case; (2) Taylor testified that she told Sheridan that the Plaintiff had the right to provide a rebuttal to the performance evaluation to be kept in his personnel file with the PHRC upon withdrawal of his charge; and (3) no one informed the Plaintiff that he would not be permitted to disclose relevant but confidential information in his submitted rebuttal despite his declared intent to proved a "detailed" rebuttal. The Plaintiff also asserts that, in early 2007, he was assigned responsibility for incoming telephone calls for a period of three months, that no other employee had ever been assigned to this duty for more than one month, and that after he lodged "several complaints," he was relieved of this duty.

As a threshold issue, we note that the Plaintiff's evidence is not directed at establishing support for the Plaintiff's claimed illegitimate motive but instead at attacking the Defendant's proffered legitimate reason for terminating the Plaintiff. This evidence would certainly be relevant to the second inquiry in the *McDonnell Douglas* framework, but consideration of that issue would be premature at this juncture, where we query only whether the Plaintiff has established the elements

of his *prima facie* case. Nonetheless, our own comprehensive review of the record evidence reveals that the record is bereft of documents, testimony, or other evidence supporting the element of causation. Indeed, nothing before this Court remotely suggests that the Defendants intentionally retaliated against the Plaintiff for prosecuting his claims of discrimination before the PHRC or that his termination was in response to his engagement in statutorily protected activity. For these reasons, we must conclude that the Plaintiff has failed to establish an essential element of his retaliation claims under each of his three statutory theories of liability and grant summary judgment in the Defendants' favor.[3]

## V. CONCLUSION

While we are not unsympathetic to the Plaintiff's plight, the evidence before the Court establishes nothing more than an unfortunate happenstance and does not serve to buttress his retaliation claims against his employer. The record contains a total dearth of evidence establishing that the Plaintiff's termination was caused by anything other than a perceived violation of the Defendants' Confidentiality Policy, and the Plaintiff has thus failed to satisfy an integral element of his retaliation claims. For these reasons, as more fully announced herein, the Court

---

[3] Because we conclude that the Plaintiff has failed to satisfy an essential element of his *prima facie* case, we decline to needlessly address the parties' remaining arguments with respect to the types of relief available to the Plaintiff.

will grant the Defendants' Motion and enter summary judgment in their favor on all counts of the Plaintiff's Amended Complaint. An appropriate Order shall follow.